No. 13,047.

PEOPLE EX REL. WAGNER *v.* TORRENCE.
(27 P. [2d] 1038)

Decided December 11, 1933.

Mr. L. E. LANGDON, Mr. JOHN T. BARBRICK, Mr. MERE-
DITH H. DOYLE, for plaintiff in error.

Mr. RALPH L. NEARY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was petitioner in the trial court for
a writ of habeas corpus to obtain the custody of his two
children from respondent, his divorced wife, defendant
in error here. He asks this court to review an adverse
judgment.

Petitioner and respondent were residents of Marinette
county, Wisconsin, during all their married life and peti-
tioner still resides there. They were divorced by the cir-
cuit court of said county on November 15, 1927. The re-
spondent, wife, was awarded the care and custody of the
children with the right of visitation by petitioner, father,
and the court further ordered ''that the children are not
to be removed from this state without the further order
of the court.''

Exhibit A, being the judgment roll of the circuit court
of Marinette county, Wisconsin, discloses an award of
the children to the father, petitioner here, on July 9,
1928, and on July 26, 1928, the custody was again changed
to the mother. On February 3, 1930, the court reawarded
the custody to respondent, mother, with the right of visi-
tation to the father.

On May 24, 1930, the respondent, mother, left Wiscon-
sin, taking the children with her, and after a brief stay
in Texas, came to Manzanola, Colorado, and in August,
1930, she settled near Tacony, Colorado, and began teach-

ing school there and married her present husband Torrence in May, 1931.

Petitioner, father, on May 14, 1931, applied to the Wisconsin court for a citation against respondent, mother, for contempt, and an order was entered by the court directing the respondent, mother, to appear and show cause, and ordering that a copy of the order be served upon counsel, who had appeared for respondent, mother, at former hearings in the divorce matter. Service was accepted by one of her lawyers but refused by the last lawyer who appeared for her, and the record there shows that at that time, she was not in the state of Wisconsin, but, as shown by the record here, was in the state of Colorado with the children and did not return. Upon this service, the court on June 8, 1931, entered its order adjudging her in contempt and changing the custody of the children to the petitioner, father. The petitioner, father, then came to Colorado, and on December 4, 1931, petitioned the district court of Pueblo county, for a writ of habeas corpus directed to respondent, mother, and asked that the children be awarded to him and be returned by him to Wisconsin. The respondent filed her return claiming custody by virtue of the order of the Wisconsin court entered February 3, 1930; and alleging that she came to Colorado in the interest of the health of one of the children; that her attorney in Wisconsin advised her that the order of February 3, 1930, vacated the former order requiring her to keep the children in Wisconsin.

Petitioner, father, demurred to the return and further answered claiming the right to the custody of the children under the order of June 8, 1931, and alleged the unfitness of respondent to have their care and custody.

On the judgment roll of the Wisconsin court and a stipulation as to facts, the petitioner rested his case. Respondent, mother, moved to dismiss the writ on the ground that the June 8, 1931, order or judgment of the

Wisconsin court was of no binding force and that the trial court here had jurisdiction to determine the custody, based solely on the question of the children's welfare. This motion was overruled. Petitioner, father, contends that the Wisconsin court at all times had, and now has, the sole jurisdiction and that the judgment of that court is entitled to full faith and credit under the federal Constitution.

The court heard all the evidence offered by both parties and entered its judgment awarding the respondent, mother, the custody of the children. We think the judgment was right.

Plaintiff in error predicates his reason for a reversal of this judgment upon the principal ground that the court erred in not giving full faith and credit to the June 8, 1931, judgment of the Wisconsin court; that under the circumstances and in the absence of fraud or want of jurisdiction affecting said judgment the children were not lawfully within the state of Colorado and therefore not under the jurisdiction of the Colorado court, and that this is an action at law.

The trial court had before it the entire judgment roll of the Wisconsin court relative to its orders and judgments concerning the parties hereto and the custody of the children here involved. Counsel for plaintiff in error, father, insists that full faith and credit should have been given to the Wisconsin judgment dated June 8, 1931. Considering that judgment in the light of the manner in which it attempted to change the custody of the children, it is not entitled to any credit whatever. At that time, as the record discloses, the court had before it one principal subject, namely, the matter of the contempt of the respondent, mother, grounded upon her removal of the children from the state of Wisconsin in violation of the original order entered awarding her the children's custody; however, the petitioner for the citation did pray for an order changing the custody to him, but made no

showing that the welfare of the children was involved in any way that would warrant a change. A copy of the order to show cause was ordered served upon J. C. Morban and Norman B. Langill, local attorneys of record for the respondent, mother. J. C. Morgan it seems made the last appearance for the respondent and he refused to accept service. Langill accepted service of the copy, but did not appear. The office of a Wisconsin attorney is of a perilous nature if he is to be charged with the duty of answering to the varying changes of custody of the children of his clients.

On this state of the record, the court found the respondent in contempt for *refusing* to appear, also for violating the order of the court in removing the children from the state of Wisconsin and beyond the jurisdiction of the court, and held that said misconduct "was calculated to and did *defeat* the rights and remedies of the defendant." The judgment order evidences its own weakness, it acknowledges that the children were beyond the court's jurisdiction and that the defendant's rights were defeated thereby.

The court fixed a new status for the children, not on any showing that their welfare required a change of custody, but as a part of the punishment of respondent for contempt and to maintain the authority of the court whose order had been violated. Is the interest and welfare of the children to be thus determined and possibly jeopardized on account of parental indifference to an order prohibiting removal from the state? We think not. It was not this brand of judgments that the federal Constitution meant should have credit in a sister state. An enraged father, knowing the children were somewhere in Colorado, as he says in his affidavit, set out armed with this thing he thought was a judgment, to tear these children of tender years from the arms of their mother, and expecting to do so on evidence that their hands and feet were dirty and chapped. He produced no other evidence

as to their condition for the record. Here he was met face to face with the state, the third party in interest in cases of this character, ready to administer to the protection of the helpless child found within its borders. This jurisdiction does not depend on the domicile of the parents, neither does it stand by, for a judgment of another state, but if either was required for jurisdiction, it was amply met here. The mother had the legal custody of the children when she crossed the Wisconsin border and that remained with her when she settled in Colorado. Violation of the removal order did not of itself defeat her custody. It subjected her to punishment for contempt. When she domiciled in Colorado, it became the domicile of the children. The petitioner admitted her residence in Colorado by his answer to the return to the writ. As to the judgment of a sister state, if the Colorado court was required, under this state of facts, to give faith and credit to a Wisconsin judgment, it would recognize the order and judgment of February 3, 1930, of that court when respondent, mother, was present in court with the husband. The children were then in the jurisdiction of the court, which gave her their care and custody.

██ "Nor is a decree of a court of one state awarding the custody of a child binding upon the courts of another state under the full faith and credit clause of the federal constitution after the child had become domiciled in the latter state. Such a decree as to a child has no extraterritorial effect beyond the boundaries of the state where it is rendered, and the courts of the second state will not remand the child to the jurisdiction of another state, especially where it is against the true interests of the child. The reason for this rule is found in the fact that children are the wards of the court and the right of the state rises superior to that of the parents. Therefore, when a child changes his domicile and becomes a citizen of a second state, he is no longer subject to the control of the courts of the first state." 15 R. C. L. 940, section 417. To the same effect, see 19 C. J. 411.

The testimony of the respondent was to the effect that subsequent to the award of the custody by the order of February 3, 1930, upon the advice of a physician, she deemed it to be for the best interest of the health of one of the children to remove said child to Colorado. If a change of condition of the child was necessary at all to give the court jurisdiction and, we think not, such is to be found in the testimony of the respondent. The court undoubtedly took this testimony into consideration as well as all other matters concerning the present interests of the children. "Every child is under the control of the state. In disposing of the custody of a child, the paramount consideration is the child's welfare, to which even the paternal right must yield." 1 syllabus, *People ex rel. v. Bolton,* 27 Colo. App. 39, 146 Pac. 489.

The petitioner by his answer to the return, invoked the jurisdiction of the court on the question of custody. This then became an equity matter and a court of equity is the ever qualified and jealous guardian of all children of tender years and will exercise its powers at any time, any place, in such a way as their protection requires.

The trial court was right in assuming jurisdiction over all the parties in this case that it might administer justice to the subjects of this state. In this matter, a decision rested in the sound discretion of the court and its findings and judgment were right and will not be interfered with.

Judgment affirmed.

MR. JUSTICE BOUCK not participating.