No. 23574.

Barbara A. (Taber) Fahrenbruch *v.* The People of the State of Colorado ex rel. Timothy E. Taber, concerning Timothy, Jr., Colleen, Michael and Katharine Taber, Minors.

(453 P.2d 601)

Decided April 28, 1969.

CHARLES GINSBERG, CHARLES A. MURDOCK, for plaintiff in error.

No brief for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

THIS writ of error is directed to the trial court's order making permanent a writ of habeas corpus.

Defendant in error, Timothy E. Taber, was the petitioner in habeas corpus proceedings in the Denver district court, seeking the return of his four children from the respondent mother, Barbara A. (Taber) Fahrenbruch. The parties will be referred to, respectively, as the "father" and the "mother."

Pursuant to the decree of divorce entered on July 12, 1966, in the district court of Lancaster County, Nebraska, the father was awarded the custody of the four children of the parties, subject to reasonable rights of visitation by the mother, as is set forth more fully herein. The mother, who after the divorce became domiciled in Colorado, refused to return the children to the father in Nebraska, and he instituted the habeas corpus proceedings in the Denver district court. The father prevailed and the mother brings this writ of error.

The following events are pertinent to the controversy to be resolved by this court. The parties were married December 12, 1959, and four children were born as issue

of this marriage. The family resided in Lincoln, Nebraska. At the time of the habeas corpus proceedings, Timothy was age 7, Colleen was age 6, Michael was age 4, and Katharine was age 3.

Marital problems developed, as a result of which the parties consulted their family lawyer. A property settlement agreement was executed, which divided the property between them and which recommended to the court that the father be awarded the custody of the four minor children. The agreement was acknowledged before a notary public by each to be his and her "voluntary act and deed." The mother then moved out of the family home, leaving the four children with the father.

A divorce proceeding was commenced in the Nebraska district court by the father. The mother entered into a written voluntary appearance, whereby she waived the issuance of summons and complaint upon her. Thereafter, on July 12, 1966, at a non-contested hearing the agreement was introduced into evidence and the court granted the father a decree of divorce upon grounds of extreme cruelty. The terms of the agreement were incorporated into the decree of divorce which, in accordance with the recommendation of the parties, awarded custody of the four children to the father, subject to reasonable rights of visitation by the mother.

During the period of time from the divorce until April 1968, the mother visited with the children on approximately eight different occasions. The mother moved from Nebraska to Colorado and she remarried on September 15, 1967. The father remarried on April 6, 1968. On several occasions, both before and after her remarriage, the mother brought the children to Denver with the father's consent for periods of visitation, after which she always returned them to their father in Lincoln.

It was agreed that the mother could have the children in Denver for a week over the 1968 Easter vacation. She agreed to return them to Lincoln the following Monday. However, she changed her mind and failed to do so. The

father received a letter from the mother's attorney, advising that the children would not be returned to Lincoln but were remaining in Denver with their mother. Efforts to compel the children's return to Lincoln failed. The father then commenced habeas corpus proceedings in the Denver district court.

The mother's answer and return to the writ alleged there had been a change of circumstances in that the mother had remarried; that in the best interest of the children they should be returned to her custody as their natural mother; and that she was financially capable of properly maintaining the children in her home.

Although not alleged in the return and answer to the writ, efforts were made by the mother, over the objection of the father, to introduce evidence to show that the agreement was the result of fraud and duress practiced by the father on the mother and that, therefore, the decree of the Nebraska court awarding custody of the children to the father was void and not entitled to recognition under the full faith and credit clause. U.S. Const. art. IV, § 1. The court reserved ruling of the offer of proof and at the conclusion of the hearing sustained the father's objection, striking from consideration all of such testimony. Written findings were entered in favor of the father, in which the court found as follows:

"2. The Court finds that the [father] was in fact awarded custody of the minor children involved by the District Court of Lancaster County, Nebraska, on or about July 12, 1966, and that the Court finds that said Nebraska decree is still in full force and effect and must be recognized and upheld by this Court under the circumstances.

"3. The Court finds that both parties * * * are fit persons to have custody of said minor children, that [father] has taken good care of said children during the period of time that they have been in his custody as a result of said Nebraska decree, and that the evidence presented here does not show that the children would in any way

be detrimentally affected by the [father's] present situation.

"4. The Court finds that all occurrences prior to the time of the Nebraska decree, and all facts upon which said decree was or might have been based, are made res judicata by said decree and thus any testimony relating to such facts, including but not limited to any and all testimony relating to duress in connection with [mother's] signing of a certain Property Settlement Agreement in connection with said Nebraska proceeding, are hereby stricken from this record.

"5. The Court further finds that said minor children are legally domiciled in the State of Nebraska as a result of the fact that their custody was awarded to the [father] by decree of said Nebraska District Court and [father's] domicile has at all times since said decree been in the State of Nebraska. Consequently, the Nebraska Court continues to have jurisdiction over said minor children, and this Court cannot and should not intervene since there is no showing of any need to protect any interest or interests of said children."

At the hearing of the mother's motion for new trial, she orally moved to amend the return and answer to the writ to incorporate therein the matters relating to fraud and duress. This motion was denied, as was the motion for new trial. A stay of execution was granted pending determination of this writ of error.

The mother urges reversal on two grounds. First, the trial court erred in refusing to admit and consider evidence that the agreement, which was the basis for the custody award by the Nebraska court, was obtained by fraud and duress practiced upon the mother by the father. Second, the trial court erred in not giving the mother custody of the children when she was shown to be a fit person to have custody of the children who were young and two of them female.

I.

Concerning the first ground for reversal, the mother

complains of procedural irregularities in the trial court's denial of her motion under R.C.P. Colo. 15(b) to amend the return and answer to the writ to include an allegation of fraud and duress. Whether this was error depends on the basic determination of whether the tendered evidence could in any event be raised as a defense to the enforcement of the Nebraska decree in the Colorado court. The evidence of fraud and duress tendered for consideration as stated in plaintiff in error's brief "showed that the petitioner [father] had subjected the respondent [mother] to violent treatment near the end of their marriage, and that she had complied with his wishes for a default divorce and an agreement giving him the custody of the children and substantial amounts of property * * * only because she was threatened with physical harm, with court proceedings exposing her adultery, and with 'a very messy case' from which the children would suffer." It is asserted this constitutes "extrinsic fraud" which would permit a collateral attack upon the Nebraska decree.

A distinction between "extrinsic" and "intrinsic" fraud has been recognized and pronounced in many jurisdictions in connection with impeachment of judgments of sister states. 30A Am. Jur. *Judgments* §§ 360, 784; Annot., 55 A.L.R.2nd 673. Extrinsic fraud, sometimes called collateral fraud, has been defined as that which goes to the jurisdiction of the court, or constitutes a fraud upon the law of the forum, or which operates to deprive the person against whom the judgment was rendered of an opportunity to defend the action when he has a meritorious defense. It is such as prevents the party complaining from making a full and fair defense. *United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93. See *Devereux v. Sperry,* 104 Colo. 158, 89 P.2d 532, for an example of extrinsic fraud, where the party attacking the judgment was deceived into signing a waiver of summons, and jurisdiction was thereby fraudulently obtained over him.

On the other hand, intrinsic fraud is defined as that which pertains to an issue involved in the original action or where acts constituting the fraud were, or could have been, litigated therein. *Kraudel v. Benner*, 148 Colo. 525, 366 P.2d 667; *United States v. Throckmorton, supra*; 30A Am. Jur. *Judgments* § 784.

In the instant case, applying the foregoing principles, we characterize the fraud and duress relied upon by the mother in avoidance of the agreement as intrinsic rather than extrinsic. As such it did not go to the jurisdiction of the court over the parties or the subject matter of the action. Nor did it operate to deceive the mother concerning the pendency of the action or the relief sought. Likewise, it did not prevent her from contesting the father's claim for divorce and custody. The fraud, if it existed, in the procurement of the agreement could have been raised as a defense in the Nebraska court and would, if established, have avoided the agreement relating to custody. However, the mother chose not to contest the action nor to assert her defense to the agreement. Under these circumstances, relief therefrom must be sought in the court which rendered the judgment. *Kraudel v. Benner, supra.*

In *Stanton v. Stanton,* 146 Neb. 71, 18 N.W.2nd 654, it was held that where, as here, the court had jurisdiction of the parties and of the subject matter, a judgment rendered is not subject to collateral attack, being voidable only and not void. If the judgment may not under these circumstances be collaterally attacked in the Nebraska court which rendered it, comity requires that our court not permit a collateral attack. 30A Am. Jur. *Judgments* § 848.

We hold that where, as here, the Nebraska court had jurisdiction over the parties and the subject matter, its divorce decree embodying an award of custody may not be collaterally attacked on the grounds of intrinsic fraud.

## II.

Plaintiff in error's second ground for reversal concerns the court's failure to award custody of the children of tender years, two of whom were daughters, to the natural mother who was found by the court to be a fit person to have custody of the children. Implicit in the mother's argument was the fact that circumstances had changed since the entry of the Nebraska decree. She showed that she had remarried, had established a domicile in Colorado, and was financially able to care for the needs of the children. She further asserted that it would be in the best interests of the children to live with her — the natural mother — rather than with the father and his new wife.

The trial court found there was no showing of any compelling need to protect the interests of the children that would justify a departure from the rules heretofore set down in *McMillan v. McMillan*, 114 Colo. 247, 158 P.2d 444, followed in *Crocker v. Crocker*, 122 Colo. 49, 219 P.2d 311; *Evans v. Evans*, 136 Colo. 6, 314 P.2d 291; *Kraudel v. Benner*, 148 Colo. 525, 366 P.2d 667; and *Lynn v. People*, 158 Colo. 282, 406 P.2d 96. Contrary to the mother's assertion, the domicile of the children remained that of their legal custodian, their father, and their presence in Colorado on a visit with the father's consent did not change their domicile from that of their father to that of their mother. It is well-settled that in the event of divorce the domicile of the child follows that of the parent to whom custody is decreed. *Evans v. Evans, supra.* The trial court was correct under the circumstances of this case in holding that the Nebraska court's jurisdiction continued over the children and that the Colorado court should not interfere with that jurisdiction. Any change of circumstances sufficient to warrant a change of custody should be presented to the Nebraska court.

The principle of comity among the sovereign states to which Colorado is committed requires that we

recognize the validity of the Nebraska decree, relief from which must be obtained in that court in the absence of an emergency affecting the immediate needs and welfare of the subject children. *Lynn v. People, supra.*

We find no error. The judgment making the writ of habeas corpus permanent is affirmed.