529 P.2d 340 (1974)
In the Matter of the ESTATE of Helen G. BONFILS, also known as Helen G. Bonfils Davis, Deceased.
Edward Mike DAVIS, also known as Edward Michael Davis, Caveator-Appellant,
v.
Donald R. SEAWELL and Earl R. Moore, Proponents-Appellees.
No. 73-343.
Colorado Court of Appeals, Div. I.
August 13, 1974.
Rehearing Denied September 10, 1974.
Certiorari Granted January 6, 1975.
Belli, Ashe, Ellison & Choulos, Melvin M. Belli, Michael Youngfellow, San Francisco, Cal., McNichols, Nigro & Baldridge, Joseph F. Nigro, Denver, for caveator-appellant.
Predovich & Ward, Lester L. Ward, Jr., Pueblo, Gorsuch, Kirgis, Campbell, Walker & Grover, Robert J. Kapelke, Denver, for proponents-appellees.
Selected for Official Publication.
RULAND, Judge.
Edward Mike Davis (caveator) appeals from a judgment of the Denver Probate Court dismissing his amended caveat to the various instruments purporting to be the last will and testament of Helen G. Bonfils, deceased. We reverse.
*341 In summary, caveator alleges that he is the lawful husband of the decedent and her only heir. Caveator acknowledges by his pleadings that a decree of divorce was entered purporting to sever the marriage with decedent and that a property settlement agreement was executed in connection therewith, but alleges that the decree and the agreement are void by reason of extrinsic fraud perpetrated against decedent, against caveator, and against the court which entered the decree.
More particularly, caveator alleges that for some time prior to initiation of the divorce action by decedent, decedent suffered from a variety of physical ailments which rendered her incapable of continuous concentration or of ambulation without assistance, and that these ailments caused decedent to be exhausted, confused, and unable to make independent or intelligent judgments and decisions. According to the caveat, the proponents and others entered into a conspiracy to deprive decedent of dominion and control over her vast resources. Specifically, it is alleged that the conspirators prevailed upon decedent through fraud and undue influence to divorce caveator and to create a charitable foundation to receive the assets of her estate. According to the caveat, the divorce was prompted by the acts of the conspirators in falsely maligning caveator's conduct and character, in spreading false rumors about him, and in preventing caveator and others friendly to him from contacting decedent personally or by telephone. It is alleged that decedent did not desire a divorce and that the caveator consented thereto based upon the false representations of the conspirators that the divorce was the voluntary wish of decedent. Caveator asserts that he neither had knowledge, nor by the exercise of due diligence could he have obtained prior knowledge of the conspiracy, fraud, and undue influence. By the caveat, caveator offers to return to the registry of the court all assets received by virtue of the property settlement agreement and requests all documents purporting to be the last will and testament of decedent be declared null and void.
Proponents of the will dated October 12, 1971, filed a motion to dismiss the amended caveat asserting, inter alia: (1) That by reason of the divorce, caveator was neither an heir nor legatee with standing to challenge the will; (2) that the probate court for the City and County of Denver is a court of limited jurisdiction and lacked subject matter jurisdiction; and (3) that, although caveator was asserting a collateral attack upon a judgment awarding decedent a decree of divorce, the amended caveat failed to allege extrinsic fraud which allegation is a prerequisite to such a collateral attack on a judgment. The probate court granted the motion on the grounds that it lacked jurisdiction to set aside the decree of divorce and on the grounds that caveator had failed to allege extrinsic fraud.

I

JURISDICTION
We consider first the issue of jurisdiction. If the Denver Probate Court has jurisdiction in this case, then the caveator may establish standing by proof of the allegations in the amended caveat that the divorce decree is invalid. We hold that the Denver Probate Court has subject matter jurisdiction.
Colo. Const. Art. VI, Sec. 9(3) provides:
"In the city and county of Denver, exclusive original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointment of guardians, conservators and administrators, and settlements of their accounts, the adjudication of the mentally ill, and such other jurisdiction as may be provided by law shall be vested in a probate court, created by section 1 of this article . . .."
Pursuant to this constitutional provision, the General Assembly enacted 1965 Perm. Supp., C.R.S.1963, 37-20-3(3), which provides:
"The court shall have jurisdiction to determine every legal and equitable question *342 arising in connection with decedents', wards', and absentees' estates, so far as the question concerns any person who is before the court by reason of any asserted right in any of the property of the estate or by reason of any asserted obligation to the estate . . . ."
It is therefore clear that the Denver Probate Court may entertain a collateral attack on the judgment of another court if determination of the issues raised by the collateral attack is necessary for settlement of an estate. Caveator's contentions that he is the only heir of decedent by reason of an invalid decree of divorce and that decedent's wills are also invalid requires determination of "legal questions" in connection with rights asserted in property of the decedent. Hence, the Denver Probate Court has subject matter jurisdiction.

II

SUFFICIENCY OF THE AMENDED CAVEAT
In reviewing the judgment dismissing the amended caveat in this case, we are required to treat the allegations of fact in the caveat as admitted. See Cook v. Denver, 128 Colo. 578, 265 P.2d 700. The judgment cannot be sustained if substantive law will authorize relief under the facts alleged. Nelson v. Nelson, 31 Colo.App. 63, 497 P.2d 1284.
In essence, the caveator in this case alleges that decedent did not desire a divorce from him, but was induced to commence such an action as the result of undue influence exerted upon her by third persons acting in furtherance of a conspiracy to defraud caveator. Thereafter, he was fraudulently induced by the conspirators into consenting to the divorce and thereby prevented by fraud from defending against the divorce action. These allegations assert fraud which is extrinsic to the judgment. See Matthews v. Matthews, 73 Colo. 597, 216 P. 704. Having been denied the opportunity to defend against the divorce action by extrinsic fraud, caveator may assert the invalidity of that judgment collaterally in the present estate proceeding. See Fahrenbruch v. People, 169 Colo. 70, 453 P.2d 601.
The judgment is reversed and the cause remanded to the Denver Probate Court with directions to determine the merits of caveator's collateral attack on the prior decree of divorce pursuant to 1965 Perm. Supp., C.R.S.1963, 153-5-33.
PIERCE, J., concurs.
SMITH, J., dissents.
SMITH, Judge (dissenting).
I respectfully dissent.
I do agree that generally the probate court has jurisdiction to determine questions which may arise concerning the status of persons before that court and the validity of their assertive rights or rights of estates against them, even though such determination may involve legal and equitable questions outside of the normal scope of such proceedings. See 1965 Perm. Supp., C.R.S.1963, 37-20-3(3). However, I take issue with the majority in its enunciation of a rule that the final judgment of a Colorado district court may be collaterally attacked in such proceedings upon an allegation that the judgment was obtained by "extrinsic" fraud.
In my view, two separate and distinct principles are involved. It has long been the rule in Colorado and in most jurisdictions that void judgments may be collaterally attacked in a court or in a proceeding different from the one in which the original judgment was entered. See DeBoer v. District Court, Colo., 518 P.2d 942; French v. Terriere, 153 Colo. 326, 386 P.2d 352; Netland v. Baughman, 114 Colo. 148, 162 P.2d 601. A void judgment has been defined as a "simulated judgment devoid of any potency because of jurisdictional defects only." Davidson Chevrolet, Inc. v. Denver, 138 Colo. 171, 330 P.2d 1116. Thus, where a court has jurisdiction over the parties and the subject matter, its judgment is not void, although it may be voidable. Netland v. Baughman, supra. The *343 reasoning behind the rule that permits collateral attack where the judgment is void as opposed to voidable is a logically supportable one. If the initial court had no jurisdiction, then there was, in fact, no authorized proceeding, and any hearings had or judgments purportedly entered therein are without legal significance. With this rule, I have no quarrel.
The second rule involved declares the judgments may be set aside if obtained by fraud. That general rule is so basic to our law as to require no citation. If timely application is made, such a judgment may be set aside, whether for extrinsic or intrinsic fraud, by the court which entered the judgment. C.R.C.P. 60(b)(2). The same rule authorizes the bringing of an independent equitable action, at any time, to set aside the judgment if it be shown that the judgment was obtained by a fraud upon the court. See Dudley v. Keller, Colo.App., 521 P.2d 175.
Colorado appears to have adopted the rule that a "fraud upon the court" is that type of fraud which could be classed as "extrinsic" as opposed to "intrinsic." Our Supreme Court has defined "extrinsic" fraud as that which goes to the jurisdiction of the court or constitutes a fraud upon the law of the forum or which operates to deprive the person against whom the judgment was rendered of an opportunity to defend the action when he has a meritorious defense. "Intrinsic" fraud pertains to an issue involved in the original action or arises where the acts constituting the fraud were or could have been litigated therein. Fahrenbruch v. People, 169 Colo. 70, 453 P.2d 601; Kraudel v. Benner, 148 Colo. 525, 366 P.2d 667; United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. The modern cases have eliminated the rather archaic and imprecise distinction between "extrinsic" and "intrinsic" fraud, and have adopted what is, in my view, a better reasoned rule, which allows for the setting aside of a decree obtained by fraud, if it would be unconscionable to allow a wrongdoer to profit from his deceptions. Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870; Publicker v. Shallcross, 106 F.2d 949 (3rd Cir.), cert. denied, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521.[1] Nevertheless, Colorado apparently does not permit the setting aside of a fraudulently obtained judgment after the expiration of rights under C.R.C.P. 60(b)(2), if the same was the result of intrinsic as opposed to extrinsic fraud. DeBoer v. District Court, supra, Fahrenbruch v. People, supra, French v. Terriere, supra.
I object to the majority's application of this second rule to a situation where a judgment is questioned as an ancillary issue in a proceeding held for an entirely different purpose. In my view, the trial court that has entered a judgment should have greater power to alter, modify, amend or vacate its judgment than should another court in which the question is only collateral to the main issue. This, in my opinion, was the purpose intended to be effectuated by the adoption of C.R.C.P. 60(b).
There is no indication in the rule, nor does it appear to be logical, that this same power is or should be granted to every other court in the state merely because one of the parties to the original judgment may wish to raise the issue collaterally to an entirely separate proceeding. In the instant case, the caveator had a plain, speedy and adequate remedy under C.R.C.P. 60(b) either by application to the Denver district court which had entered the divorce decree, or by an independent equitable action filed in the Denver district court asking it to set aside and vacate its prior decree. Dudley v. Keller, supra.
In the federal cases such as Throckmorton, supra, the question is whether the courts of one state should, under the full faith and credit clause, enforce a judgment entered in a sister state. That determination does not affect the validity of the original decree in the state where the decree was entered. It may only preclude its enforcement in the state in which the decree *344 is attacked. In the instant case, however, application of such a rule could, if permitted, authorize one trial court of this state to overrule the judgment of another trial court of this state, both courts having equal jurisdiction, and the decrees of both being valid and enforceable throughout the state. If collateral attacks in Colorado were limited to a determination of whether the initial court had jurisdiction over the parties and the subject matter, or, to state it differently, limited to the setting aside of judgments void ab initio as opposed to those which become voidable by virtue of the conduct of the parties during the proceedings, this problem would not arise.
It is my opinion, therefore, that an attack on a judgment based upon fraud which does not go to jurisdiction over the parties or the subject matter should be limited to the remedies set forth in C.R.C.P. 60(b) and should be heard by the court which in the first instance entered the judgment. Collateral attacks should be limited to only those issues which attack the jurisdiction of the initial court. I would, therefore, affirm the ruling of the probate court.
NOTES
[1] It should be noted that Marshall v. Holmes was decided some thirteen years after United States v. Throckmorton and, of course, Publicker v. Shallcross was considerably later.