719 P.2d 313 (1986)
Jennifer BAKKE, Petitioner,
v.
The DISTRICT COURT In and For the FOURTH JUDICIAL DISTRICT of the State of Colorado, and the Honorable William E. Rhodes, One of the Judges Thereof, Respondents.
No. 85SA402.
Supreme Court of Colorado, En Banc.
May 19, 1986.
*314 Stephanie H. Yukawa, Ranson, Thomas & Yukawa, Colorado Springs, for petitioner.
Judith Ward Mattox, Colorado Springs, for respondents.
DUBOFSKY, Justice.
In this original proceeding we issued a rule to show cause why the El Paso County District Court should not be required to reinstate a petition for enforcement of a *315 child custody decree and change of visitation in order to exercise its discretion regarding whether jurisdiction to consider the petition is in Colorado. We now make the rule absolute.

I.
On March 23, 1983, the District Court of Oklahoma County, Oklahoma, entered a decree of judgment declaring William C. Brandon to be the biological father of Angela Nicole Brandon and William Clark Brandon II. Brandon and Jennifer Bakke, the children's mother, had never been married, and the children had lived with their mother continuously since birth. On April 12, 1984, the court ordered Brandon to make support payments and awarded Brandon visitation rights. On October 11, 1984, Brandon filed an application for a contempt order, alleging that Bakke had refused to notify him regarding the children's school activities and caused the children to use the name "Bakke," not "Brandon." The Oklahoma court issued a contempt citation and ordered Bakke to appear November 14, 1984. When Bakke failed to appear on November 14, the court issued a bench warrant for her arrest. Bakke claims that she left Oklahoma between October 20 and October 22, 1984, and that she arrived in Colorado at the beginning of November. On January 2, 1985, Bakke wrote to the clerk of courts in Oklahoma, stating that she did not respond to the contempt citation because she moved to Colorado at the beginning of November and her finances would not allow her to travel back to Oklahoma.
On April 4, 1985, Brandon, who by then had resided in Arkansas for approximately two years, filed a motion in Oklahoma to modify child custody. In June, Bakke requested that the Oklahoma court deny jurisdiction, but the court refused to do so. On August 19, 1985, Bakke filed a petition in the District Court of El Paso County to enforce her Oklahoma custody decree and to modify visitation.[1] On August 20, 1985, after a hearing in Oklahoma on Brandon's motion, at which Bakke's attorney made a special appearance, the Oklahoma judge, purportedly acting under Oklahoma's Uniform Child Custody Jurisdiction Act, transferred custody to Brandon and issued a pick-up order for the children, requiring the appropriate law enforcement officer to take physical custody of the children, then ages 5 and 7, and to deliver them to a state department of human services or other licensed child welfare agency for safekeeping until Brandon presented himself to claim the children.[2]
After Brandon challenged the Colorado court's jurisdiction by filing a special appearance, the El Paso County district judge wrote a letter to the Oklahoma judge requesting that the Oklahoma court stay proceedings in Oklahoma because Bakke was in Colorado, it had been stipulated that the children had been residents of Colorado for more than six months, the children were both in school in Colorado, information concerning the children's well-being was in Colorado, and proceeding in Colorado would be in the best interest of the children.[3] The Oklahoma judge responded that Bakke had refused to provide Brandon with her Colorado address, that she had *316 changed the children's names to Bakke, that she had denied Brandon visitation since October 20, 1984, that she was seeking to destroy the children's relationship with their father, and that because Bakke had openly defied his court order, the Uniform Child Custody Act did not come into play. Contrary to statements in the letter from the Oklahoma judge, when Bakke left Oklahoma she was not under a contempt citation for failure to allow visitation. The contempt citation concerned her failure to provide Brandon with the children's school activity reports and her failure to use the children's correct legal names. Nothing in the application for the contempt citation nor the court's contempt order concerned visitation. On October 23, 1985, the El Paso County district court dismissed Bakke's petition, finding that Colorado did not have jurisdiction because the Oklahoma court refused to relinquish jurisdiction.

II.
Bakke asserts that the district court erroneously concluded that it could not proceed based on the Oklahoma judge's letter of October 1, 1985. In deciding whether a trial court erroneously dismissed a case because of lack of jurisdiction, this court inquires into whether jurisdiction exists in Colorado and whether the trial court should exercise jurisdiction. Barden v. Blau, 712 P.2d 481 (Colo.1986); McCarron v. District Court, 671 P.2d 953 (Colo.1983); see Johnson v. District Court, 654 P.2d 827 (Colo. 1982). Jurisdiction in child custody cases is governed by section 14-13-104(1), 6 C.R.S. (1973), which provides as follows:
A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c) of this subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
In this case we believe that the El Paso County district court would have had jurisdiction under subsections 14-13-104(1)(a) or (1)(b).[4] The parties stipulated that the children had been residents of Colorado for more than six months; Colorado was therefore the home state of the children at the time of the commencement of the proceeding in the El Paso County *317 district court. It is significant that Colorado is the children's home state because "[m]ost American children are integrated into an American community after living there six months." Unif. Child Custody Jurisdiction Act § 3, 9 U.L.A. commissioner's note at 123 (1979) [hereinafter cited as U.C.C.J.A.] (quoting Ratner, Child Custody in a Federal System, 62 Mich.L.Rev. 795, 818 (1964)). Because the evidence in the record indicates that Bakke moved to Colorado in early November 1984, and the petition was filed in August 1985, the El Paso County district court had jurisdiction under subsection 14-13-104(1)(a). Moreover, the El Paso County district judge, in his letter to the Oklahoma judge, stated that it would be in the best interests of the children to allow the matter to proceed in Colorado. The children were enrolled in school in Colorado and all necessary information concerning their well-being was available in Colorado. Jurisdiction therefore was also proper under subsection 14-13-104(1)(b).[5]See Wheeler v. District Court, 186 Colo. 218, 526 P.2d 658 (1974).

III.
Given that the El Paso County district court had jurisdiction, the inquiry remains whether that court should exercise jurisdiction. Colorado's Uniform Child Custody Jurisdiction Act (Colorado Custody Act), §§ 14-13-101 to -126, 6 C.R.S. (1973 & 1985 Supp.), contains a number of limitations on the exercise of jurisdiction by this state's courts. Section 14-13-107(1), 6 C.R.S. (1973), provides as follows:
A court of this state shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
Although this section prohibits a court from proceeding with a petition concerning child custody where the court of another state is "exercising jurisdiction substantially in conformity with this article" and the other court refuses to stay its proceedings, Colorado trial courts are free to determine whether the other court's proceedings are substantially in conformity with the Colorado Custody Act. See R. Crouch, Interstate Custody Litigation: A Guide to Use and Court Interpretation of the Uniform Child Custody Jurisdiction Act 17-18 (1981); Bodenheimer, The Rights of Children and the Crisis in Custody Litigation: Modification Of Custody In and Out of State, 46 U.Colo.L.Rev. 495, 501-04 (1975); Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn.L.Rev. 711, 734 (1982).
The Oklahoma court's order does not state the basis for jurisdiction under Oklahoma's Uniform Child Custody Jurisdiction Act (Oklahoma Custody Act), which adopts the Uniform Child Custody Jurisdiction Act's jurisdictional requirements with one addition. See Okla.Stat.Ann. tit. 10, § 1605 (West 1985 Supp.).[6] Although the *318 Oklahoma proceeding was pending when Bakke filed her petition in Colorado, the Oklahoma proceeding appears not to be substantially in conformity with the Colorado Custody Act. Jurisdiction in Oklahoma is not proper under subsection 14-13-104(1)(a) of the Colorado Custody Act because Oklahoma was not the home state of the child at the time of commencement of the proceeding in Oklahoma and neither parent was living in Oklahoma at the time Brandon commenced proceedings. The Oklahoma court's order includes a finding that "it would be in the best interests of said children to grant [Brandon's] Motion to Modify Child Custody" but contains no finding that either child or at least one contestant has a significant connection with Oklahoma or that there is "substantial evidence concerning the child[ren]'s present or future care, protection, training, and personal relationships" in Oklahoma. Oklahoma therefore does not have jurisdiction under subsection 14-13-104(1)(b) of the Colorado Custody Act, the purpose of which is to limit jurisdiction, not proliferate it. U.C.C.J.A. § 3, 9 U.L.A. commissioner's note at 124.
Jurisdiction in Oklahoma was also improper under subsection 14-13-104(1)(c) of the Colorado Custody Act because the children were not physically present in the state, the children were not abandoned in Oklahoma, and the court made no findings regarding an emergency. Finally, jurisdiction was improper under subsection 14-13-104(1)(d) of the Colorado Custody Act because, as discussed above, Colorado has jurisdiction under subsections 14-13-104(1)(a) or (1)(b) and Colorado had not declined to exercise jurisdiction. Because compliance with the jurisdictional requirements of subsection 14-13-104(1) of the Colorado Custody Act is required in order to be "substantially in conformity" with the act, subsection 14-13-107(1) does not prohibit the El Paso County district court from taking jurisdiction.[7]
*319 The Colorado court's jurisdiction is also not barred by section 14-13-115(1), 6 C.R.S. (1973), which provides as follows:
If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and a court of this state has jurisdiction.
As discussed above, the Oklahoma court's August 20, 1985, order changing custody to Brandon did not meet the jurisdictional requirements in the Colorado Custody Act subsection 14-13-104(1). Because the Oklahoma court did not have jurisdiction "substantially in accordance" with the Colorado Custody Act, the Colorado court has jurisdiction to modify the Oklahoma court's original decree granting custody to Bakke.[8]See McCarron, 671 P.2d 953 (district court abused discretion by declining to take jurisdiction in a custody case where litigation in Colorado was appropriate because child and family resided in state, significant evidence concerning care was in Colorado, and there had been an erosion of connections with Oklahoma); Wheeler, 186 Colo. 218, 526 P.2d 658 (Colorado has jurisdiction where father and children are domiciled in Colorado, state has significant connection with children, and no action is pending in Illinois); see also Kudler v. Smith, 643 P.2d 783 (Colo.App.1981), cert. denied, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982); Glass v. Glass, 36 Colo.App. 91, 537 P.2d 1092 (1975).
Because the El Paso County district court had jurisdiction over the custody modification under subsections 14-13-104(1)(a) or (1)(b) of the Colorado Custody Act and the Oklahoma court did not exercise jurisdiction either "substantially in conformity" with or "substantially in accordance" with the Colorado Custody Act, it was an abuse of discretion for the El Paso County district court to find that Colorado did not have jurisdiction because the Oklahoma court had stated that it had jurisdiction.[9]
Colorado's Custody Act has a number of purposes, including avoiding jurisdictional competition with other courts; promoting cooperation with courts of other states; assuring that child custody litigation takes place in a state that has significant evidence concerning the child's care, protection, training, and personal relationships and to which the child and his or her family have a close connection; and discouraging continuing controversies over child custody. *320 § 14-13-102(1), 6 C.R.S. (1973).[10] Forum shopping results in shifting the child from state to state, leaving the child with no sense of belonging. Wheeler, 186 Colo. 218, 526 P.2d 658.
While we acknowledge the importance of avoiding forum shopping, Colorado courts still must act in the best interests of the child. Roberts v. District Court, 198 Colo. 79, 596 P.2d 65 (1979); cf. Nelson v. District Court, 186 Colo. 381, 527 P.2d 811 (1974) (first consideration is best interests of children, not parents' wrongdoing). Because the home state of the child is that state in which the child is in physical residence, the home state is the preferred forum for modification of custody. McCarron, 671 P.2d 953. In this case, the children, ages 5 and 7, have always lived with their mother. In addition, the El Paso County district court noted that the children are presently in school in Colorado, their residence has been established here for more than six months, all necessary information concerning their well-being is available in Colorado, and it would be in the best interests of the children to proceed in Colorado. The significance of the children's residence in Colorado and school attendance is that neighbors and teachers may provide evidence concerning the children's care, training, and personal relations. See McCarron, 671 P.2d 953; see also State ex rel. Murphy v. Boudreau, 653 P.2d 531 (Okla.1982).
Brandon suggests that the Colorado court should not take jurisdiction because of Bakke's misconduct, which he asserts includes changing the name of the children without his permission, failing to provide school reports, interfering with his visitation, making perjured statements regarding support and the paternity of one child, failing to provide an address for support payments, and failing to appear in court in Oklahoma. Section 14-13-109(2), 6 C.R.S. (1973), provides that:
[u]nless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of the custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
Because Bakke has always had custody of the children, she did not improperly remove them from the physical custody of the person entitled to custody nor did she improperly retain the children while Brandon had *321 custody. In addition, Bakke has not improperly removed the children from Oklahoma because the Oklahoma court's order on April 12, 1984, grants Bakke permission to remove the children from Oklahoma.[11] Bakke's removal of the children to Colorado therefore does not violate any provision of the custody decree.
It is unclear whether the support and visitation order issued April 12, 1984, requires Bakke to use "Brandon" as the children's last name because the order requires only that she cause to be utilized in school and in other records "the full and correct legal names of the children." The order does not require her to notify Brandon when she changes the legal names of the children. Therefore, if the children's full and correct legal names include "Bakke," not "Brandon," Bakke may cause the children to utilize the name "Bakke." The support and visitation order does not require Bakke to provide Brandon with her or the children's address, but Brandon's assertions, if proven, that Bakke failed to provide school reports and interfered with his visitation may constitute violations of the support and visitation order.
Except for removal of a child from physical custody of a person entitled to custody, which mandates a court's refusal to take jurisdiction unless the interests of the children require otherwise, a court has discretion to exercise its jurisdiction when a petitioner has violated a provision of a custody decree of another state. See Nelson, 186 Colo. 381, 527 P.2d 811. We do not condone Bakke's alleged violations of the Oklahoma court's support and visitation order, but we note that "[t]he paramount consideration must be the best interests of the child, not the wrongdoing of the parent." Id. at 386, 527 P.2d at 814. The trial court may hear evidence regarding Brandon's allegations that Bakke has violated the Oklahoma support and visitation order. See Johnson, 654 P.2d 827. The Colorado trial court's discretion to decline jurisdiction, however, is limited by whether another state has jurisdiction to decide custody, whether it is in the best interests of the children that the Colorado court assume jurisdiction, and whether declining jurisdiction would be just and proper under the circumstances. See §§ 14-13-104(1)(d), 6 C.R.S. (1973); XX-XX-XXX(2); U.C.C.J.A. § 8, 9 U.L.A. commissioner's note at 143 (court's refusal to take jurisdiction when a parent with custody removes a child to another state depends on whether the parent's action is serious enough to require such a drastic sanction).
Because the Oklahoma court was not exercising jurisdiction substantially in conformity or accordance with the Colorado Custody Act, and because the Colorado court had jurisdiction to modify Oklahoma's support and visitation order, we order the El Paso County district court to reinstate Bakke's petition and determine whether exercising its jurisdiction is in the best interests of the children and is just and proper under the circumstances.
Judgment reversed and case remanded with directions to reinstate the petition.
NOTES
[1] Bakke's petition seeks to enforce the paternity judgment. She contends that the portion of the judgment ordering Brandon to make support payments to her in effect granted custody of the children to her.
[2] On September 20, 1985, the District Court of El Paso County entered a pick-up order based on the Oklahoma court's pick-up order of September 19, 1985. The order directed the Sheriff of El Paso County to take possession of the children and deliver them to the Department of Social Services in El Paso County. The children were to be kept at Social Services until the court gave further orders regarding the custody of the children. On September 25, 1985, the District Court of El Paso County prohibited the children's removal from Colorado until further order of the court.
[3] The district judge's letter also noted that Brandon's counsel contended that Bakke's conduct was reprehensible and that the character of Bakke's conduct would be considered by the court. The district judge ordered visitation in Colorado for Brandon prior to a hearing scheduled for October 9, 1985.
[4] Rather than seeking to modify custody, Bakke is attempting to enforce custody by requesting the El Paso County district court to grant her continued custody of the children. She also requests that the costs of visitation be changed from the allocation provided in the April 12, 1984, Oklahoma court order. Because we determined in Barden, 712 P.2d 481, that a modification of visitation rights is a "custody determination" within the meaning of section 14-13-103(2), 6 C.R.S. (1973), Bakke's request that the costs of visitation be reallocated may be considered as a custody modification.
[5] Section 14-13-104(2), 6 C.R.S. (1973), notes that the physical presence of the child and one parent in Colorado is not sufficient to confer jurisdiction. In this case, however, Colorado is the home state of the children, the children and one parent have a significant connection to Colorado, and all necessary information concerning their well-being is here. Jurisdiction in Colorado would be proper under section 14-13-104(1)(d) if jurisdiction were not proper under subsections 14-13-104(1)(a) and (1)(b).
[6] Section 1605 provides as follows:

A. A court of this state [Oklahoma] which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
1. This state:
a. is the home state of the child at the time of commencement of the proceeding, or
b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
2. It is in the best interest of the child that a court of this state assume jurisdiction because:
a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and
b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
3. The child is physically present in this state and:
a. the child has been abandoned, or
b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
b. it is in the best interest of the child that this court assume jurisdiction.
....
D. The controlling criterion for awarding custody by a court of this state shall always be what is in the best interest of the child, other statutory provisions merely being factors which may be considered.
Section 1605 is identical to Colorado's section 14-13-104(1) except that Oklahoma has added subsection 1605(D). The Oklahoma Supreme Court has interpreted this subsection as not being an independent ground for assuming jurisdiction but as requiring only that once a court exercises jurisdiction, custody must be awarded in the best interest of the child. See Holt v. District Court, 626 P.2d 1336 (Okla.1981).
[7] Several courts have found another court's jurisdiction not to be "substantially in conformity" with the Uniform Child Custody Jurisdiction Act and thus have exercised jurisdiction. See, e.g., Allison v. Superior Court, 99 Cal.App.3d 993, 160 Cal.Rptr. 309 (1979) (California could assert jurisdiction where Texas had not adopted the act, service of process gave only 3-day notice, not 10-day notice, as required by the act, and court found that visitation and custody should be determined in one proceeding); State ex rel. Larner v. Martin Circuit Court, 456 N.E.2d 395 (Ind.1983) (Indiana asserted jurisdiction when Colorado was found to lack jurisdiction because custody was awarded in ex parte divorce proceedings), cert. denied, ___ U.S. ___, 105 S.Ct. 138, 83 L.Ed.2d 78 (1984); Sharp v. Aarons, 101 Misc.2d 323, 420 N.Y.S.2d 1013 (N.Y.Fam.Ct. 1979) (New York court, not Wisconsin court, had jurisdiction because New York jurisdiction is in the best interest of the child and no other court has jurisdiction under other subsections of New York's domestic relations law despite fact that Wisconsin suit was filed first); Williams v. Zacher, 35 Or.App. 129, 581 P.2d 91 (1978) (Oregon court, not Colorado, has jurisdiction where Colorado was not the child's home state, contacts with Colorado were insufficient, and mother had failed to meet notice requirements). A number of courts have scrutinized another state's basis for jurisdiction before finding that the other state was "substantially in conformity" with the act. See, e.g., Hanson v. Hanson, 379 So.2d 967 (Fla.Dist.Ct.App.1979) cert. denied, 388 So.2d 1114 (Fla.1980); McDonald v. McDonald, 74 Mich.App. 119, 253 N.W.2d 678 (1977); Bergstrom v. Bergstrom, 271 N.W.2d 546 (N.D.1978). Although in dismissing Bakke's petition the El Paso County district court noted that the "obvious thing to do" would be for Bakke to appeal the Oklahoma court's decision, Bakke would be able to proceed in Colorado anyway whenever her appeal in Oklahoma was decided. Once the Oklahoma case is not pending, Oklahoma would not have jurisdiction. Colorado could take jurisdiction if Colorado remains the children's home state or the children have a significant connection to Colorado and substantial evidence regarding the children's care is in Colorado, see Wheeler, 186 Colo. 218, 526 P.2d 658, or if Arkansas has not acquired jurisdiction.
[8] Because the Oklahoma court's modification of the original custody decree was not substantially in accordance with the act, we also determine that section 14-13-114, 6 C.R.S. (1973), does not bar Colorado jurisdiction. Section 14-13-114 provides as follows:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of the article, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this article.
[9] A trial court's refusal to take jurisdiction in a child custody modification proceeding is reviewed under an abuse of discretion standard. See McCarron, 671 P.2d 953; Nelson v. District Court, 186 Colo. 218, 527 P.2d 811 (1974).
[10] Section 14-13-102(1) provides as follows:

The general purposes of this article are to:
(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
(c) Assure that litigation concerning the custody of a child take[s] place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;
(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;
(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;
(g) Facilitate the enforcement of custody decrees of other states;
(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and
(i) Make uniform the law of those states which enact it.
[11] The Oklahoma court's visitation order provides that "should plaintiff natural mother relocate outside the State of Oklahoma, the cost of transportation for exercise of visitation privileges by defendant shall be equally divided between plaintiff natural mother and defendant."